IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 23-cv-00050-RM-JPO

CROSS CREEK RANCH, LLC, a Colorado limited liability company,
PINNACLE SERVICES, INC., a California corporation, and
HEALTH E SOLUTIONS, INC., a California corporation,

    Plaintiffs,

v.

RYAN CROTTS, an individual,

    Defendant.

---

### ORDER ON PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

---

This case is before the Court on Plaintiffs Cross Creek Ranch, LLC, Pinnacle Services, Inc., and Health E Solutions, Inc.'s (collectively, "Plaintiffs") Motion to Dismiss Defendant's Counterclaim (Opposed) ("Motion to Dismiss"). (ECF No. 19.) The Motion to Dismiss has been fully briefed. (ECF Nos. 26, 27.)

Now, having taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and as set forth fully below, the Court **ORDERS** that Plaintiffs' Motion to Dismiss is **GRANTED**.

I.      **BACKGROUND**[1]

Plaintiffs own, lease, and manage agricultural ranching property in Colorado and New Mexico. (ECF No. 13 at 1–2, ¶ 1.) On December 7, 2022, they filed a lawsuit against Defendant in Colorado state court alleging that Defendant's negligence and concealment in the performance of his duties as ranch manager caused more than $1.4 million in damages to their livestock, equipment, and property. (ECF No. 5.) On January 6, 2023, Defendant removed the case to this Court under 28 U.S.C. § 1332. (ECF No. 1.)

A.      **Plaintiffs' Allegations**

In the FAC, Plaintiffs allege that Defendant was hired as a "ranch manager" in March 2020 due to his representations that he was "experienced in managing all facets of cattle ranches," but "from the outset of his engagement, he demonstrated an acute lack of experience, training and competence in the area of agricultural ranch management, including the care of plaintiffs' cattle herd for its Cattle Operations." (ECF No. 13 at 2–3, ¶ 6.) The FAC sets forth several examples of what Plaintiffs call Defendant's "sheer negligence and gross misconduct" in failing to manage other workers and take proper care of the animals. (*Id*. at 3, ¶ 6(i)–(viii).)

Plaintiffs claim that Defendant was removed from his managerial position in October 2021 and relegated to a maintenance role. (*Id*. at 4, ¶ 8.) This arrangement, and thus Defendant's employment, ended in December 2021, although Plaintiffs allowed Defendant to reside on the ranch until June 2022. (*Id.*, ¶¶ 8–9.)

Plaintiffs attribute over $1 million in damages to Defendant's mismanagement and

---

[1] The following allegations are taken from Plaintiffs' First Amended Complaint ("FAC") (ECF No. 13) and Defendant Ryan Crotts' Answer, Counterclaim and Jury Demand to First Amended Complaint ("Counterclaim") (ECF No. 15). All non-conclusory allegations are presumed true for the purposes of the Motion to Dismiss. Any citation to docketed materials is to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

misconduct, which includes losses relating to the death of cows and calves, the loss of a breeding cycle, damage to ranch property and equipment, and the destruction of a new truck engine. (*Id.* at 4–5, ¶¶ 10–14.)

### B.     Defendant's Counterclaim

Defendant filed his Counterclaim, alleging abuse of legal process, on February 10, 2023. (ECF No. 15.) Defendant alleges that in early 2020 he entered into a Labor Service Agreement as an independent contractor with Cross Creek Cattle Company, LLC ("CCCC"), which is affiliated with Plaintiffs and for whom he exclusively worked during his period of employment. (*Id.* at 6, ¶¶ 6–7.) Defendant claims that he was hired as a ranch hand and did not provide any "management services"; the cattle operations were managed by Chad Foutz, the brother of CCCC president Mike Foutz. (*Id.* at 7, ¶¶ 13–14.)

Pursuant to the Labor Service Agreement, Defendant was to be paid $5,000 per month and, after a one-year probationary period, he was entitled to a one percent equity interest in the cattle herd. (*Id.* at 7–8, ¶¶ 20, 23.) The Labor Service Agreement also provided for written notice of termination. (*Id.* at 8, ¶¶ 25–27.)

In January 2022, Defendant alleges he asked Mike Foutz when he would be paid his equity interest in the cattle herd for 2021. (*Id.*, ¶ 28.) Mr. Foutz informed him on January 31, 2022 that he was not entitled to any equity interest due to poor performance and that another individual had been hired to replace Defendant and oversee the herd. (*Id.*, ¶ 29.) This was the first time Defendant was told that his performance was deficient in any way. (*Id.* at 9, ¶ 33.) Prior to this conversation with Mr. Foutz, Defendant had understood that his replacement was actually hired to replace Justin Cox, an ex-employee that Defendant alleges the Foutzes had blamed for the loss of cattle as a pretext to avoid paying him. (*Id.* at 9–10, ¶¶ 30, 33, 38.)

On February 9, 2022, Defendant received a letter from CCCC's counsel informing him that the Labor Service Agreement was terminated effective January 31, 2022, and blaming him for the loss of the cattle that had previously been attributed to Justin Cox. (*Id.* at 9, ¶¶ 36–37.)

On March 28, 2022, after Chad Foutz "verbally assaulted" Defendant's wife in the presence their daughter, Mike Foutz determined that Defendant could no longer work at CCCC. (*Id.*, ¶ 40.) Mr. Foutz offered Defendant three months' severance and $5,000 in moving expenses, and permitted him to continue residing in a house on the ranch property until his daughter graduated from high school. (*Id.*)

Defendant asserts that he was not terminated for cause and denies all the allegations of "sheer negligence and gross misconduct." (*Id.* at 10–11, ¶¶ 41–48.) He claims that Plaintiffs "fabricated" these performance issues to "intimidate" Defendant from pursuing his rights under the Labor Service Agreement. (*Id.* at 12, ¶ 50.)

Defendant turned down CCCC's termination offer in May 2022, and on July 15, 2022, he sent a demand letter for $79,966.00 for wages owed, his equity interest in the herd, and severance. (*Id.*, ¶¶ 51–53.) When that was rejected, Defendant made an arbitration demand in November 2022, which included claims of breach of contract, civil theft, and violation of the Colorado Wage Act. (*Id*. at 15, ¶ 55.) Plaintiffs soon thereafter filed suit in La Plata County District Court, which Defendant claims was done for the improper and ulterior purpose of intimidating and deterring him from pursuing his contract and wage claims.

## II.  LEGAL STANDARD

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint (or, in this case, the Counterclaim), view those allegations in the light most favorable to the plaintiff, and draw all reasonable

4

inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). However, a court need not accept threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements or allegations plainly contradicted by properly considered documents or exhibits. *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023). To defeat a motion to dismiss, the pleading must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also* id. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

### III.   ANALYSIS

The abuse of process tort provides a remedy in situations where litigation, though properly initiated, is "misused through an irregular, generally coercive act." *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010) (citation omitted), *as modified on denial of reh'g* (Feb. 24, 2011), *aff'd sub nom. Accident & Injury Med. Specialists, P.C. v. Mintz*, 279 P.3d 658, 667 (Colo. 2012). "A valid abuse of process claim must allege (1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage." *Active Release Techs., LLC v. Xtomic, LLC*, 413 P.3d 210, 212 (Colo. App. 2017) (quoting *Mackall v. JP Morgan Chase Bank, N.A.*, 356 P.3d 946, 954 (Colo. App. 2014)).

"The essential element of an abuse of process claim is the use of the legal proceeding in

5

an improper manner; therefore, an improper use of the process must be established." *Active Release Techs.*, 413 P.3d at 212 (quoting *Sterenbuch v. Goss*, 266 P.3d 428, 439 (Colo. App. 2011)). Ordinarily, the improper purpose element "takes the form of coercion to obtain collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009) (quotations omitted); *see also Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006) (explaining that the improper purpose "is ordinarily a form of extortion in which a lawfully used process is perverted to an unlawful use"); Restatement (Second) Torts, § 682, cmt. b (no claim lies "when the process is used for the purpose for which it is intended, [even though] there is an incidental motive of spite or an ulterior purpose"). "Examples of improper use of process include recording a lis pendens or obtaining a writ of replevin as leverage to demand money, property, or some other advantage in exchange for a release or dismissal of the action." *Yadon v. Lowry*, 126 P.3d 332, 337 (Colo. App. 2005) (citing *Salstrom v. Starke,* 670 P.2d 809, 811 (Colo. App.1983) (lis pendens filed not to protect legitimate property interest but to prevent a sale to any other party and to coerce property owner to consider previous offers), and *Aztec Sound Corp. v. W. States Leasing Co.,* 32 Colo. App. 248, 252, 510 P.2d 897, 898 (1973) (writ of replevin used not to regain property, but to recover monies not required by contract)).

Here, both parties, but especially Defendant, focus on whether Plaintiffs' suit is factually supported and has a cognizable basis in law. Defendant argues that his abuse of process claim survives Plaintiffs' Rule 12(b)(6) challenge because he has sufficiently alleged that Plaintiffs' FAC amounts to "sham litigation," which is "[a]ll that is necessary for an employee to proceed on an abuse of process claim." (ECF No. 26 at 4.) In support of this contention, Defendant relies

6

primarily on *Technical Computer Services, Inc. v. Buckley*, 844 P.2d 1249 (Colo. App. 1992), and *Boyer v. Health Grades*, 359 P.3d 25 (Colo. 2015). The Court finds that Defendant's reliance is misplaced.

In *Buckley*, the court held that a party may bring an abuse of process counterclaim against "sham" litigation that is devoid of factual support or has no basis in law. 844 P.2d at 1252. The court cited *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361 (Colo. 1984) ("*POME*"), for this proposition. *Id.* But in *POME*, the Colorado Supreme Court "adopted a 'sham' requirement as an *additional* element of an abuse of process claim when a lawsuit involves an issue of public concern." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-cv-01595-CMA-MJW, 2019 WL 140710, at *8 (D. Colo. Jan. 9, 2019) (citing Timothy P. Getzoff, *Dazed and Confused in Colorado: The Relationship Among Malicious Prosecution, Abuse of Process, and the Noerr–Pennington Doctrine*, 67 U. Colo. L. Rev. 675, 696–98 (1996) [hereinafter "*Dazed and Confused*"]), *report and recommendation adopted*, No. 17-cv-01595-CMA-NRN, 2019 WL 4667994 (D. Colo. Sept. 25, 2019). In *Boyer*, the Colorado Supreme Court clarified that "the heightened standards we articulated in *POME*, reflecting the sham exception . . . [are] inapplicable to a resort to administrative or judicial process implicating purely private disputes." 359 P.3d at 29. It is apparent, then, that *Buckley*, which was decided pre-*Boyer*, misread *POME* by applying the sham litigation framework to a purely private dispute.

Defendant's counterclaim likewise implicates a purely private dispute. Accordingly, the sham exception standard is not applicable to this case. Instead, the traditional elements cited above govern Defendant's abuse of process claim. Thus, in addition to damages, "the concept of abuse of process requires two basic showings: using legal *means* improperly, and harboring an improper *motive* for doing so." *Partminer Worldwide Inc. v. Siliconexpert Techs. Inc.*, No. 09-

7

cv-00586-MSK-MJW, 2010 WL 502718, at *2 (D. Colo. Feb. 10, 2010). While ulterior motive may be inferred by a showing of improper use, improper use cannot be inferred by a showing of ulterior motive. *Dazed and Confused* at 685 (citing *Inst. for Professional Dev. v. Regis College*, 536 F. Supp. 632, 635 (D. Colo. 1982)).

Here, Defendant alleges that Plaintiffs filed suit to intimidate him and deter him from pursuing his wage claims. In other words, he challenges Plaintiffs' motives. But he does not allege that, viewed objectively, Plaintiffs used the judicial process in an improper manner. *See James H. Moore & Assoc. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994) (tort of abuse of process requires willful action in the use of that process which is not proper in the regular course of proceedings). "An improper use of the legal process occurs when a particular procedural tool is used in an attempt to accomplish a result which that tool, when properly used, could not provide." *Gustafson v. Am. Fam. Mut. Ins. Co.*, 901 F. Supp. 2d 1289, 1305 (D. Colo. 2012). "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim." *Sterenbuch*, 266 P.3d at 439 (quotation and citation omitted). Thus, "a claim for abuse of process is extrinsic to the merits of a case," and "[t]he fact that there is an incidental motive or consequence of harassment or intimidation to a process that is otherwise invoked for its normal purpose does not give rise to a cognizable claim for abuse of process." *Tatonka Cap. Corp. v. Connelly*, No. 16-cv-01141-MSK-NYW, 2016 WL 9344257, at *5 (D. Colo. Dec. 29, 2016).

Even if Plaintiffs' negligence and concealment claims are unfounded, the relief they seek—money damages—is consistent with the nature of their claims. "Bringing a [negligence] case and carrying it to its natural end to obtain a result such an action is designed to achieve

doesn't constitute an improper use of process, no matter the motive." *Parks v. Edward Dale Parrish LLC*, 452 P.3d 141, 145 (Colo. Ct. App. 2019). If Defendant is proved right that Plaintiffs fabricated their reasons for not paying him, he may bring an action against them for malicious prosecution. *See Pinon Sun,* 2019 WL 140710, at *4 (recognizing that "the filing of a sham lawsuit—a suit without basis on fact or law—can be remedied via a malicious prosecution claim once the underlying action is terminated"); Dan B. Dobbs, et al., *The Law of Torts* § 594 (2d ed.) ("If the plaintiff can show instigation of a suit for an improper purpose without probable cause and with termination favorable to the now-plaintiff, she has a malicious prosecution or wrongful litigation claim, *not a claim for abuse of process*." (emphasis added)). But Defendant cannot proceed on his abuse of process claim where he only alleges that the Plaintiffs' lawsuit is groundless.

## IV.   CONCLUSION

Therefore, Plaintiffs' Motion to Dismiss (ECF No.19) is **GRANTED**. Defendant's Counterclaim is **DISMISSED WITHOUT PREJUDICE**.

DATED this 18th day of March, 2024.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge